**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF CONNECTICUT**

Oneil Myron WILKS, et al                    :          Docket No. 3:00-cv-01815-SRU

                              v.                          :

Steven J. Farquharson,et al.                 :

**Plaintiff's Supplemental Brief**

**Background**

     Petitioner Erik Wilks (hereinafter "Mr. Wilks") is the biological father of Oniel Myron Wilks (hereinafter "Oniel"). Oniel was born in Jamaica March 2, 1979. Mr. Wilks and Oniel's mother were never married.  On January 9, 1987, Mr. Wilks became a naturalized U.S. citizen. Subsequently, Mr. Wilks became the sole custodian of Oniel when he migrated from Jamaica to the U.S. in 1991, based on an immigrant petition Mr. Wilks filed on his behalf.

     At the age of 16, Oniel applied for naturalization using form N-400.  When he appeared for his N-400 interview, an INS official instructed him to complete an N-600 application.  Form N-600 is an application for certificate confirming citizenship pursuant to INA §322.  Section 322 allows a U.S. citizen parent whose child was born outside of the United States and under the age of 18, to apply for a certification of citizenship if the child conforms to the requirements for automatic citizenship for a child born outside of the U.S. to alien parents.  On June 18, 1996 when Oniel was 17 years old, he submitted an N-600 Application for Certificate of Citizenship based on the naturalization of his father, Erik Wilks, and pursuant to Immigration & Nationality Act (hereinafter "INA") §322.

     At the time that Oniel's application was submitted, he was statutorily eligible for U.S. citizenship in accordance with the regulation set forth in INA §321(a)(3) which states

automatic citizenship is granted to "A child born outside of the U.S. of alien parents, or of an alien parent and a citizen parent….becomes a citizen of the U.S. upon fulfillment of the following conditions:

(3)The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) such a child is residing in the United States pursuant to lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States under the age of eighteen years."

8 C.F.R. §322.2(b) (1996) regulations did not recognize "illegitimate" children as eligible for citizenship.  However, the INS official who handled Oneil's application was not diligent.  As a result, the officer was not able to determine that Oniel was a legitimate child under Jamaican law, despite the fact that his parents were never married.  Since 1981, INS has recognized the legitimization of children born outside of wedlock in Jamaica.  Matter of Clahar, 18 I&N Dec. 1 (BIA 1981).  The BIA recognized that children born in Jamaica out of wedlock after October 19, 1976 qualified as legitimated children for INS purposes.  According to Matter of Clahar

"Subsequent to our decision, the Jamaican Minister of Justice provided a memorandum to the United States Consul General in Jamaica regarding the relationship between the Jamaican Status of Children Act and the country's Legitimation Act.  It was stated that under the Status of Children Act all children are now accorded equal treatment under the laws of Jamaica subject only to specific and limited provisions which are either transitional in nature or which ensure that children born out of wedlock 'are not prejudiced by the difficulty in identifying their natural fathers…'…

The memorandum prepared by the Jamaican Justice Ministry was ultimately submitted to the Immigration and Naturalization Service. The Service requested comments on the memorandum from the American-British Law Division of the Library of Congress. On receipt of a response from the Library of Congress, the Service filed the present motion in which the Service's Deputy General Counsel concurs in the Jamaican Minister's assessment that under the Jamaican Status of Children Act "the legal duties and obligations of a father towards a child born out of wedlock are in all significant respects the same as those of a child born in

wedlock." The Service urges the Board to reconsider our 1978 decision and to find that children born out of wedlock, who are covered by the Status of Children Act, may qualify as legitimate or legitimated children under section 101(b)(1) of the Immigration and Nationality Act.

In view of the detailed assessment of the effect of the Jamaican Status of Children Act of 1976 provided by the Justice Minister of Jamaica and the Service's support of his conclusions, we will modify our 1978 decision in this case. We now hold that a child within the scope of the Jamaican Status of Children Act may be included within the definition of a legitimate or legitimated "child" set forth in section 101(b)(1) of the Immigration and Nationality Act so long as the familial tie or ties are established by the requisite degree of proof and the status arose within the time requirements set forth in section 101(b)(1)." Matter of Clahar, supra.

Despite the decision of Matter of Clahar, on August 1, 1996, INS informed Oniel that after careful review of his N-600 application, an error was made at his interview for Naturalization. His natural father, Erik Wilks, could not apply for Oniel to become a citizen because Erik Wilks was never married to Oniel's mother. Oniel was further instructed to re-submit the returned N-400 application and a new set of fingerprints when he turned 18.

At the May 17, 2006 Second Circuit Court of Appeal's argument, the U.S. government conceded that the INS officer's advice to Oneil on August 1, 1996 that his father could not apply for him to become a U.S. citizen was in error. U.S. Attorney Dione M. Enea's letter dated June 1, 2006 supports this fact. The Second Circuit Court did not have the jurisdiction to offer an equitable remedy such as a declaratory judgment on this case because only Oneil Wilks' case was before the Second Circuit.

On September 30, 2002, the Honorable Stefan R. Underhill ruled that pursuant to 8 USC §1503(a)(1996), the District Court could not hear a declaration of citizenship claim if the individual's national status is in issue in a removal proceeding. As a result Oneil's claims were dismissed. However, §1503(a)(2) did not preclude Mr. Erik Wilks from raising the claims on his son's behalf and therefore the Court has jurisdiction to hear Mr. Wilks' claims. His claims were

therefore stayed pending disposition of his son's administrative proceedings. Because those proceedings were not resolved in favor of Oniel, then the court has jurisdiction to revisit Mr. Wilks' claims.

**1.      Erik Wilks, as a third-party petitioner, has standing to pursue his son's interests**

Mr. Erik Wilks has standing to raise the claims on behalf of his son. Pursuant to Lake v. Reno, 226 F.3d 141; 2000 U.S. App. Lexis 23526 "a litigant seeking to assert the rights of another person must satisfy three elements (1) injury in fact, (2) a close relation with the third party, and (3) some hindrance to the third party's ability to protect his or her own interests." Lake v. Reno, supra citing Campbell v. Lousiana, 523 U.S. 392, 397.

There can be no dispute that Mr. Wilks satisfies the three elements of the case. (1) Mr. Wilks' son was injured as a result of the INS official's erroneous conclusion regarding the legitimacy of his son Oniel. On May 17, 2006, the government conceded that the INS officer's advice to Oneil on August 1, 1996 that his father could not apply for him to become a U.S. citizen was in error. U.S. Attorney Dione M. Enea's letter dated June 1, 2006.

(2) Mr. Erik Wilks is the father of Oniel Wilks and (3) Oniel has a substantial hindrance to assert his own rights as on September 30, 2002, this Court ruled in favor of the Government's Motion to Dismiss Oneil's claims.

In Lake v. Reno, the Second Circuit concluded that the petitioner had standing to assert the case on his father's behalf. "We therefore hold that Lake possess third-party standing to assert his father's equal protection claim." See Lake v. Reno, supra at 147. Similarly, to the Lake v. Reno, in Accord United States v. Ahumada-Aguilar, 189 F.3d 1121, 1122-23, 1126 (9th Cir. 1999) that circuit found that the petitioner had standing where citizen father was dead, even

though father had no contact with his son his whole life and may not even have known of his existence.

Similarly, this Court should find that Mr. Erik Wilks has standing to pursue this case on behalf of his son in order for this Court to recognize his status as a U.S. citizen. To deny Mr. Wilks the right to raise this claim in District Court would violate his rights to due process because the plain interpretation of the preceding statute states that Oniel became a derivative beneficiary of his father's citizenship when he entered the U.S. in 1991. Mr. Wilks brought his son to the U.S. to eliminate the distance between them so that they could develop a stronger father son bond. Mr. Wilks also gave his son Oniel the opportunity to develop a better life here in the U.S. that he might not have been able to achieve in his native Jamaica.

Certainly, Oniel temporarily strayed from his father's ambitions for him, however Oneil Wilks has paid his debt to society by serving his time and appears to have matured, rehabilitated and has adjusted well to his environment since his release in Summer 2006, including attending college. Had it not been for the erroneous decision of the INS official who adjudicated Oniel's application, Oniel would have the authorization to continue to build his life in the U.S. Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction Rodriguez v. Debuone, 175 F.3d 277, 234 (2nd Cir. 1999). Removal from the U.S. and separation from his family and the life that he has known since he was 11-years-old will result in irreparable harm to Mr. Wilks' son. Oniel has already been restituted for his indiscretion. However, to subject him further to a deportation/removal order will be equivalent to banishing him and "[t]o banish (an immigrant) from home, family and adopted country is punishment of the most drastic kind." Padilla-Agustin v. INS, 21 F.3d 970, 978 (9th Cir. 1994). Mr. Wilks has standing to have his son's plight reviewed in this Court of law.

### 2.     Injury in Fact

In this case, Oneil made a prima facie claim that 1) he was a U.S. citizen based on the status of his father and 2) he is a U.S. citizen since 1991. A child's acquisition of citizenship on a derivative basis occurs by operation of law and not by adjudication. No application is filed, no hearing is conducted, and no certificate is issued when such citizenship is acquired. A person who claims to have derived U.S. citizenship by naturalization of a parent <u>may</u> apply to the Attorney General for a certificate, but a certificate is <u>not</u> required. INA §341 of the Act, 8 U.S.C. § 1452; <u>See</u> Immigration and Naturalization Service Interpretations 340.1. Since no certificate of citizenship is required when a child acquires citizenship based on the U.S. citizenship of a parent, regardless of when and how the application is filed the child's status as citizenship remains the same.

Pursuant to 8 C.F.R. 341.6, the Oneil was entitled to have the previously denied N-600 application since 1996, reopened. Instead, INS and the AAU erroneously denied the application by treating his application as newly filed. This Court must make an independent inquiry as the government admitted an error occurred in 1996.

### 3.     Congressional Intent and Public Policy.

Recognition of Oniel's citizenship status is consistent with several of the identified purposes of former INA § 321(a). In enacting this particular derivative citizenship provision, Congress sought to protect parental rights, to preserve the family unit, and to ensure that only those alien children whose "real interests" were located in the U.S. with their custodial parent, and not abroad, should be automatically naturalized. <u>See</u> S. Rep. No. 2150, at 4 (1940); 86 Cong. Rec. 11945-53 (1940); H.R. Rep. No. 82-1365 pt. B., at 1680 (1952). The protection of parental rights as an important purpose of § 321(a)(3).

Public policy supports recognition and maintenance of a family unit. The Immigration and Nationality Act intent is to keep families together. It should be construed in favor of family units and the acceptance of responsibility by family members. See, e.g., Kaliski v. Dist. Dir. of INS, 620 F.2d 214, 217 (9th Cir. 1980) (discussing the "humane purpose" of the INA and noting that a "strict interpretation" of the Act, including an "arbitrary distinction" between legitimate and illegitimate children, would "detract from . . . the purpose of the Act which is to prevent continued separation of families."); H.R. Rep. No. 85-1199, pt. 2 (1957), reprinted in 1957 U.S.C.C.A.N. 2016, 2020 (observing that the "legislative history of the Immigration and Nationality Act clearly indicates that Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of U.S. citizens and immigrants united.").

4.      **There are exceptional circumstances affecting this case**.

In *Lee You Fee v. Dulles*, 236 F.2d 885 (E.D. Wis. Aug 3, 1955) , the Court of Appeals for the Seventh Circuit informed us that the Government should not be heard to contend that a plaintiff had been deprived of his citizenship because of the failure of the plaintiff to do something which the officials of the Government had carelessly or willfully prevented his doing. The cases upon which the Seventh Circuit based this view involved a statutory provision by which children born abroad, to a parent who was a U.S. citizen, would forfeit American citizenship unless they took up residence in the U.S. by their 16th birthday.  Denial of citizenship was deemed improper in those cases where the child had made timely application but was prevented from entering the U.S. within the prescribed period by "the tardiness and unnecessary delay by officials of the consular office in issuing to the plaintiff the necessary travel orders." *Id.* A similar result is required in the case before us.

Oneil made a proper application before INS to secure a certificate of citizenship as proscribed by statute. INS improperly denied his application because it failed to apply the proper statute law to Oneil's case at the time. Accordingly, based on the INS' concession in the April 7, 2000 denial of the application, Oneil was precluded from eligibility for citizenship because he was over 18 years old. Therefore, if INS had adjudicated the 1996 application properly when Oneil was less than 18 years old, he would be a U.S. citizen today. Had INS complied with their own regulations and treated the second N-600 application as a Motion to Reopen, Oneil would be a U.S. citizen. Since the derivation of citizen operates by statute, if Oneil would have been a U.S. citizen in 1996, he should be a U.S. citizen today.

**Conclusion**

Although Erik Wilks never married Oniel's mother, his birth was legitimated in accordance to the provisions of the Status of Children Act, enacted in Jamaica on November 1, 1976 and recognized by the BIA in their 1981 decision regarding Matter of Clahar, supra. Therefore, at the time that his N-600 application was adjudicated, Oniel was statutorily eligible for citizenship. Erik Wilks, Oneil's father, has standing in this declaratory judgment complaint. This is the only Court that can remedy the government's previous admitted error and provide the Plaintiff, Erik Wilks, with the remedy sought, derivative citizenship for his son.

Respectfully submitted,
Erik Wilks


/s/
DelCastillo & Associates, LLC
By: Jose L. DelCastillo, Esq.
255 Main Street, Suite 2
Hartford, CT 06106-1896
(860) 527-8886 ext. 104

Date: May 31, 2007
Hartford, Connecticut

CERTIFICATE OF SERVICE

This is to certify that I, Jose L. DelCastillo, served the Respondent with a copy of the

foregoing first class mail, postage prepaid or e-mail to the

John B Hughes
U.S. Attorney's Office
157 Church Street, 23rd Floor
New Haven, CT 06510

/s/

Dated: this 1st day of June 2007

_____
Jose L. DelCastillo, Esq.