UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ONEIL MYRON WILKS, ET AL.  :
:
Plaintiffs,  :
:
v.  : Civil No. 3:00-CV-01815-SRU
:
STEVEN J. FARQUHARSON, ET AL.  :
: June 28, 2007
Defendants.  :

DEFENDANT'S RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL BRIEF

**I. FACTS**

Petitioner Erik Wilks is the legitimate father of Oniel Wilks (hereafter "Oniel"), who was born March 2, 1979 in Jamaica. Petitioner and Oniel's mother never married. Petitioner became a naturalized U.S. citizen on January 9, 1987. In 1991, Oniel migrated from Jamaica to the United States and Petitioner assumed sole custody of Oniel.

When he turned sixteen in 1995, Oniel applied for citizenship using an N-400 application. At his interview, an INS official instructed him to file a N-600 application pursuant to 8 U.S.C. § 1433, which he submitted at the age of seventeen. When this application was processed, the INS official mistakenly told Oniel he was ineligible for N-600 citizenship and instructed him to resubmit an N-400 application for naturalization when he turned eighteen. Oniel never resubmitted such an application.

Oniel was convicted of credit card theft on June 26, 2007 and the INS initiated removal proceedings pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Oniel sought to terminate the removal proceedings, claiming he derived citizenship through his father pursuant to his application under

8 U.S.C. § 1433 in 1995. The immigration judge ultimately found Oniel deportable since he had not received citizenship. Oniel and Petitioner appealed the removal proceedings in district court. Petitioner claimed Oniel *automatically* derived citizenship through him in 1991 pursuant to 8 U.S.C. § 1432(a)(3). This court stayed Petitioner's claims while Oniel's were pending. During arguments at the Second Circuit Court of Appeals, the U.S. Government conceded that the INS officer's advice to Oniel in 1995 was in error. However, Oniel's claims were denied by that court and he was ordered deported. This Court lifted the stay on Petitioner's claims and ordered further briefing.

## II.  SUMMARY

Petitioner lacks the statutory authority pursuant to 8 U.S.C. § 1432(a)(3) to pass derivative citizenship to Oniel because he cannot prove legal separation from Oniel's mother. Petitioner failed to demonstrate appropriate third party standing to question Oniel's citizenship. Petitioner also failed to prove a due process violation. Finally, this court is unable to provide the equitable remedy Petitioner requests because of constitutional and precedential limitations.

## III.  ARGUMENT
### A.  8 U.S.C. § 1432(a)(3) Statutorily Bars Petitioner's Claim

Petitioner claims his son received derivative citizenship under former 8 U.S.C. § 1432. That statute provided in pertinent part:

> *Section 1432. Child born outside of the United States of alien parents; Conditions for automatic citizenship.*
> (a) A child born outside of the United States of alien parents ... becomes a citizen of the United States upon fulfillment of the following conditions: (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the

> child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of child has not been established by legitimation; and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
> (5) Such child is residing in the United States pursuant to lawful admission for permanent residence at the time of the naturalization of the parent naturalized ... or thereafter begins to reside permanently in the United States while under the age of eighteen years.

*See* former 8 U.S.C. § 1432 (hereafter "§ 1432"). Petitioner asserts that Oniel automatically derived citizenship under § 1432(a)(3) in 1991. It is not contested that relief pursuant to § 1432(a)(1) and § 1432(a)(2) is not available since Oniel's mother is neither a citizen nor deceased. The only avenue of derivative citizenship available to Oniel thus fell under § 1432(a)(3), in particular the grant of citizenship upon "the naturalization of the parent having legal custody of the child when there has been a legal separation of the parents." The alternative grant of citizenship upon the "naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation" was irrelevant to Oniel since Petitioner is his father and previously legitimized Oniel.

Petitioner failed to prove that Oniel met all the statutory requirements of automatically derived citizenship. It is uncontested that Oniel satisfied § 1432(a)(4) and § 1432(a)(5) since naturalization would have occurred before he reached the age of eighteen and Oniel resided permanently in the United States before he turned eighteen. Petitioner further had legal custody of Oniel pursuant to § 1432(a)(3). However, Petitioner did not prove that he was *legally separated* from Oniel's mother at the time Oniel would have received derivative citizenship, as also required by § 1432(a)(3).

The Second Circuit ruled that an informal separation of married parents did not suffice as

legal separation for purposes of derivative citizenship in *Brissett v. Ashcroft*, 363 F.3d 130 (2d Cir. 2004). The statute required a formal act which altered the martial relationship according to the laws of the state or nation with jurisdiction over the marriage. *Id.* at 132. The court stated: "Because couples can informally separate without legally altering their relationship, including an informal separation within the provision's terms would effectively eviscerate the force of the term 'legal' from the statute." *Id.* at 134. The court determined that a formal legal separation need not be a *judicial* decree, so long as the separation-granting act was legally valid in the granting jurisdiction and pursuant to the purposes of § 1432(a)(3). *Id.* at n.3.

The Second Circuit recently determined that legal separation was a "principled" and "governing" feature of the statute, regardless of the parent's previous marital status. *Lewis v. Gonzales*, 481 F.3d 125 (2d Cir. 2007). The court allowed the possibility that some jurisdiction, including Jamaica, may allow unwed couples to achieve legal separation. *Id.* at n.4. The court ruled, however, that a legal separation was a plain language requirement to be fulfilled, whether or not the parents previously married. *Id.* at 130. Since derivative citizenship carries significant consequences for both the child and parents, the court determined that a legal separation requirement, in tangent with a legal custody obligation, afforded non-citizen parents protection of their parental rights. *Id.* at 131. Particularly, derivative citizenship occurs automatically whether the non-citizen parent agrees. The court concluded that the separate and formal requirements of legal separation and legal custody jointly protect any parental interests a non-citizen parent maintains. *Id.*

The District Court of Connecticut held that an alien from Jamaica failed to acquire derivative citizenship after his father's naturalization since his parents were not "legally

separated" *because* they were never joined in marriage. *Barton v. Ashcroft*, 171 F. Supp. 2d 86, (D. Conn. 2001). The court relied on the Seventh Circuit's determination that the INS interpreted "legal separation"as "a termination of the marital status." *See Wedderburn v. INS*, 215 F.3d 795, 799 (7th Cir. 2000). The District Court thus reasoned that because the petitioner's parents were never married, they could never legally separate and fulfill the statutory requirement. *Barton*, 171 F. Supp. 2d at 86. Further, the petitioner failed to illustrate whether Jamaican law allowed couples who never married to become "legally separated." *Id.*

According to the decisions in both *Lewis* and *Barton*, Petitioner must prove the statutory "legal separation" requirement despite never formally marrying Oniel's mother. Petitioner may potentially rely upon either Connecticut or Jamaican law pursuant to *Bissett*. According to the laws of Connecticut, a decree of legal separation must be "granted" upon the "finding" of select causes, thereby requiring judicial statement. C.G.S. § 46b-40(c). Petitioner failed to proffer any such judicial orders. According to the laws of Jamaica, Petitioner is further unable to establish a judicial separation, since such orders were abolished under the current Matrimonial Causes Act § 35(1) (1989). *See Morgan v. Att'y Gen. of the U.S.*, 432 F.3d 226, 233 (3rd Cir. 2005) (providing brief description of changing Jamaican marital law). Petitioner has not and can not profer any legal, let alone judicial, equivalent of "legal separation." Petitioner thus fails to meet the statutory requirement of "legal separation" for derivative citizenship according to § 1432(a)(3) under either Connecticut or Jamaican law.

### B.    Petitioner Lacks Third Party Standing To Raise Son's Citizenship Claim

To obtain third-party standing, the Petitioner must prove: (1) an "injury in fact" that creates a "sufficiently concrete interest" in the outcome of the dispute; (2) a "close relation" to

the third party; and (3) a limitation upon the "third party's ability to protect his own interest." *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1352-3 (S.D. Fla. 2006) (internal citations omitted). Because Federal Courts hold a general rule against third party standing in order to prevent unnecessary litigation, claimants must fulfill all requirements and succinctly present remediable issues. *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006).

### i. Petitioner Cannot Claim Injury in Fact

The U.S. Supreme Court ruled that "general grievances against allegedly illegal governmental conduct are insufficient" to form an injury and establish standing. *Id.* at 1353, citing *U.S. v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431 (1995). It is also extensively more difficult to prove standing when a claimant is not the direct object of a governmental action. *DH2, Inc. v. U.S.E.S.C*, 422 F.3d 591 (7th Cir. 2006). The Second Circuit determined that an injury in fact must be "fairly traceable to the challenged action of the defendant, and ... is likely to be redressed by the requested relief." *Mid Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Co.*, 418 F.3d 168, 173 (2d Cir. 2005). Further, the Southern District of Florida held that "familial association" with an alien attempting to immigrate to the United States is not a statutory or Constitutional right. *Movimiento Democracia*, 417 F. Supp. 2d at 1353. The court reasoned neither citizens nor lawful permanent residents possessed due process or equal protection rights regarding the deportation of family members. The court stated, "If a wife cannot intervene in the deportation of her husband, she certainly would not have standing to intervene in the interdiction and repatriation of her husband, son, or daughter." *Id.*

Petitioner failed to prove a sufficient injury in fact. First, Petitioner may not claim the INS official's unintentional mistake in 1995 as an injury under *Hays*. Petitioner further did not

-6-

sustain an injury as a result of the government action since Oniel's derivative citizenship was denied, not Petitioner's. Second, Petitioner failed to prove that Oniel's failure to receive derivative citizenship was directly attributably to the INS. Although the INS made a mistake, Petitioner nevertheless failed to meet the statutory requirements of derivative citizenship under § 1432(a)(3) as discussed *supra*. Petitioner's statutory bar further makes him unable to prove that the relief requested, namely citizenship for Oniel, would be redressed by adjudication, as required by *Mid Hudson Catskill Rural Migrant Ministry*. Finally, Petitioner cannot claim the lack of parental association with Oniel as an injury since citizens cannot intervene with the valid deportations of family members according to *Movimiento Democracia*.

### ii. Petitioner Cannot Prove A Limitation Upon Oniel's Ability To Protect His Own Interest

It is well established that claimants may only assert their own legal rights and interests, and cannot rely on the rights or interests of others. *See generally Hinck v. U.S.*, 127 S.Ct. 2011 (2007); *Securities Ind. & Financial Markets Ass'n v. Garfield*, 469 F. Supp. 2d 25 (D. Conn. 2007). Further, the Southern District of Florida determined that "no hindrance to the third party exists if the third party is already asserting its own rights or interests." *Movimiento Democracia*, 417 F. Supp. 2d at 1353.

Petitioner relies upon Oniel's already exhausted claim to citizenship. First, Petitioner bases his claim upon *Oniel's* citizenship, which is therefore not Petitioner's own legal interest. Second, Oniel extensively asserted his own right to citizenship by appealing his deportation orders and adjudicating his citizenship claim under § 1433. Although Oniel currently faces deportation, he adequately represented his own legal right through all available channels.

### C. Petitioner Fails To Prove That His Due Process Rights Would Be Violated

Petitioner alleges that denying standing would violate his due process rights because the plain reading of the statute declares that Oniel received derivative citizenship when he entered the United States. However, as previously discussed, Petitioner failed to fulfill the statutory requirement of being "legally separated" from Oniel's mother in order for his son to have received citizenship. Therefore, Petitioner cannot successfully claim that his procedural due process rights would be violated since he did not qualify for the rights he claims.

Furthermore, it has been established that there is no constitutional right to familial integrity under the Fifth Amendment. The First Circuit recently held that a parent's valid deportation does not violate a child's constitutional rights in *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2-3 (1st Cir. 2007). The court reasoned that deportations of parents are routine and, if such a constitutional right existed, the court concluded that "it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or ... to the conscription of a parent for prolonged and dangerous military services." *Id.* at 3. The Ninth Circuit similarly concluded that "economic hardship and the normal deprivation of familial support" associated with deportation are "common results of deportation, and therefore do not constitute extreme hardships." *U.S. v. Lopez-Larios*, 42 Fed. Appx. 35, 38 (9th Cir. 2002). Plaintiff cannot claim a denial of due process based upon his family life since such an assertion is not a constitutionally protected right.

Finally, a due process argument based on equal protection has been refuted by *Nguyen v. INS*, 533 U.S. 53, 121 S.Ct. 2053 (2001). The Supreme Court concluded that gender distinction

-8-

made in the statute between deriving citizenship through a mother as opposed to the father did not violate the Fifth Amendment. *Id.* The Second Circuit elaborated upon this decision by reasoning children who's unmarried parents who could not meet the "legally separated" requirement of § 1432(a) did not "slip through some crack in our immigration law" since such children had an opportunity to claim citizenship through 8 U.S.C. § 1433. *Lewis,* 481 F.3d at 132. The court relied upon the Seventh Circuit's reasoning in *Wedderburn.* That court stated:

> In a small subset of the cases in which there is legal custody it may prove impossible to meet the legal-separation requirement even in the long run- perhaps because a child was legitimated without marriage, perhaps because the nation with jurisdiction over the marriage does not recognize divorce or legal separation. See *Matter of Miraldo.* But for these cases [§ 8 U.S.C. 1433] permits the custodial parent to obtain U.S. citizenship for his or her child as a matter of right, by filling an application. A law does not become unconstitutional just because it does not fit 100% of the cases.

*Wedderburn,* 215 F.3d at 800. The situation described in *Webberburn* is identical to the scenario raised by Petitioner. Since legal separation is impossible for Petitioner to prove, Oniel is left with only a remedy under § 1433. Oniel's previous appeal of deportation determined that he was ineligible to such relief.

**D.     This Court Cannot Grant Petitioner's Request for Declaratory Judgment**
The United States Supreme Court has repeatedly held that courts may not grant citizenship directly through their equitable remedies. Only Congress holds the authority to create citizenship rights. U.S. Const. art. 1, § 8, cl.4. The Court stated, "The power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *INS v. Pangilinan,* 486 U.S. 875, 883-84, 108 S.Ct. 2210 (1988). Similarly, it ruled that "Once it has been determined that a

person does not qualify for citizenship, ... the district court has no discretion to ignore the defect and grant citizenship." *Fedorenko v. U.S.*, 449 U.S. 490, 517 101 S.Ct. 737 (1981). The Second Circuit reiterated this settled mandate when it determined that a "court may not award equitable relief in contravention of expressed intent of Congress." *Edwards v. INS*, 39 F.3d 299, 309 (2d Cir. 2004).

Petitioner may not receive citizenship for his son as an equitable remedy. Petitioner failed to meet all of the statutory requirements of derivative citizenship under § 1432(a)(3) since he neglected to produce evidence of "legal separation." If this Court granted Petitioner's son citizenship, it would be in direct violation of the statute and thus Congressional intentions. Moreover, since Petitioner's son did not qualify for derivative citizenship, a decision to confer citizenship through equitable remedy would directly counter 8 U.S.C. § 1227(a)(2)(A)(iii), which allows for deportation of an alien who is convicted of an aggravated felony, like Petitioner's son.

Even if this Court concluded that the INS official's error when discussing Oniel's citizenship warranted equitable estoppel, the Second Circuit ruled that "affirmative misconduct" is a necessary prerequisite to such a remedy, and equitable estoppel should be applied against the government with the "utmost caution and restraint." *See Drozd v. INS*, 155 F.3d 81, 90 (2d Cir. 1998) (citing *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994). Petitioner failed to provide evidence that the immigration official purposefully, maliciously, or actively intended to misled Oniel and Petitioner. Thus, the "affirmative misconduct" requirement was not met. *See Michigan Express, Inc. v. U.S.*, 374 F.3d 424, 427 (6th Cir. 2004) (recognizing that the four circuits defining "affirmative misconduct' require an intentional or reckless act that is more than simple negligence, and listing cases). Similarly, Petitioner's reliance upon *Lee You Fee v. Dulles*

supports the conclusion that the immigration official did not engage in "affirmative misconduct." In that case, the court reasoned in dicta that the government should not "carelessly or willfully" prevent citizenship. Petitioner failed to provide any evidence indicating that the mistake was either careless or willful. *Lee You Fee v. Dulles*, 23 F.2d 885, 887 (E.D. Wis. 1955).

### IV.  CONCLUSION

Because Petitioner lacks statutory authority, standing, and a due process claim, this Court is unable to provide Petitioner with the remedy sought, and is respectfully asked to dismiss Petitioner's claim.

> Respectfully submitted,
>
> KEVIN J. O'CONNOR
> UNITED STATES ATTORNEY
>
> _____
> JOHN HUGHES
> CHIEF, CIVIL DIVISION
> ATTORNEY BAR # ct05289
> 157 CHURCH STREET
> NEW HAVEN, CT  06510
> TELEPHONE:  (203) 821-3700
> FAX: (203) 773-5373
> Email: john.hughes@usdoj.gov

ON THE BRIEF:
Mary Caitlin Sochacki
Law Student Intern

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the within and foregoing Defendant's Response to Plaintiff's Supplemental Brief was mailed postage pre-paid this 28th day of June 2007 to: Jose L. DelCastillo Salamanca, DelCastillo & Associates, 255 Main Street, 2nd Floor, Hartford, CT 06106-1896.

_____
JOHN HUGHES
CHIEF, CIVIL DIVISION